IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-CV-00374-GCM-DSC

| | |
|---|---|
| MANN+HUMMEL FILTRATION TECHNOLOGY US LLC,<br><br>Plaintiff,<br><br>v.<br><br>DEMAYO LAW OFFICES, LLP, STEPHEN PATTERSON,<br><br>Defendants. | **ORDER** |

**THIS MATTER** comes before the Court on Defendant DeMayo Law Offices, LLP's Motion to Dismiss (ECF No. 12), the Memorandum and Recommendation (M&R) of the Honorable David S. Cayer, United States Magistrate Judge (ECF No. 18), and the Objections to the M&R (ECF No. 19). This motion is ripe for disposition. For reasons that are discussed in more detail below, the Court will overrule the objections, adopt the magistrate's recommendation as modified, and deny the motion to dismiss.

I.     INTRODUCTION

An employer health plan paid certain medical expenses for a participant injured in a motor vehicle accident. The participant obtained counsel and achieved a settlement of tort claims arising from the accident. Contrary to the employer's asserted rights of subrogation and reimbursement, the participant and his attorney reimbursed only a portion of the funds paid out by the health plan, resulting in this lawsuit. The law firm filed the present motion to dismiss. At issue in the motion is whether Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA) authorizes a plan administrator to sue a participant's attorney in order to obtain reimbursement

from the participant's settlement proceeds. The magistrate judge concluded that it does. After a careful *de novo* review, the Court agrees.

## II. BACKGROUND

Plaintiff Mann+Hummel Filtration Technology US LLC ("Mann+Hummel") is the sponsor and fiduciary of the Mann+Hummel Filtration Technology US LLC Welfare Benefit Plan ("the Plan"), an employee welfare benefit plan covered by ERISA.[1] ECF No. 1 ¶¶ 4–5. The Plan provides benefits to eligible employees and their dependents, including various health insurance benefits. *Id.* ¶ 8.

In April 2019, Defendant Stephen Patterson, a participant or beneficiary of the Plan,[2] was injured in a motor vehicle accident. *Id.* ¶¶ 6, 14. The Plan ultimately paid $18,295.88 in medical expenses on Patterson's behalf. *Id.* ¶ 15. Patterson separately hired Defendant DeMayo Law Offices, LLP ("DeMayo") to represent him in tort claims related to the accident. *Id.* ¶ 7.

As Patterson's legal claims were pending, the insurer's reimbursement and recovery agent reminded Patterson and DeMayo of Patterson's contractual obligations under the Plan. *Id.* ¶ 18. Specifically, plan participants were required to fully reimburse any benefits received from third parties, including proceeds from "full and partial settlements, judgments, or other recoveries . . . ."[3] *Id.* ¶ 13. Plan participants were forbidden from accepting settlements which failed to provide full reimbursement, absent written approval from the Plan. *See id.*

On September 21, 2020, DeMayo remitted a check to the Plan in the amount of $8,146.13—more than $10,000 less than what the Plan had paid in medical expenses. *Id.* ¶ 19.

---

[1] The allegations in this section are drawn from the complaint and are treated as true for purposes of the motion only.
[2] It is unclear exactly what Patterson's status was with Mann+Hummel because the Complaint pleads Patterson's status in the disjunctive. *See* ECF No. 1 ¶ 6.
[3] The Plan also enjoyed rights of subrogation. *Id.* ¶ 13.

DeMayo sent a letter accompanying the check. *Id.* ¶ 20. It stated: "This case has been resolved and all the available funds have been proportionally distributed among the medical providers pursuant to our client's wishes and our limited contractual obligations." *Id*. The letter continued: "[W]e understand that this does not satisfy the equitable lien and obligations between our client and your client . . . . [a]ny legal or contractual liability for the repayment and/or negotiation of any equitable liens is the client's sole obligation and responsibility." *Id*. ¶ 21. Neither DeMayo nor Patterson had sought the Plan's written approval of the settlement before agreeing to it. *Id*. ¶ 20.

After the Plan attempted to obtain further reimbursement, DeMayo sent another letter: "We have closed the file and will not engage with any lien holder in any fashion or represent our client in this matter." *Id.* ¶ 22. The letter explained that at least $4,603.87 had been allocated for payment to other medical providers. *Id.* Mann+Hummel then filed suit against Patterson and DeMayo, seeking a constructive trust or equitable lien on settlement proceeds, plus interest, a declaration of the Plan's ownership of the settlement proceeds up to the amount owed, an injunction ordering turnover of the proceeds, and attorneys' fees and costs. *See id*. at 11.

DeMayo moved to dismiss, arguing that the complaint failed to state a claim under Section 502(a)(3) of ERISA. The magistrate recommended denial of DeMayo's motion, concluding that (1) ERISA fiduciaries may sue beneficiaries' attorneys under § 502(a)(3); and (2) North Carolina state law similarly permits suits by third party lienholders against attorneys to force distribution of funds. DeMayo objects to both conclusions.

### III. STANDARD OF REVIEW

When reviewing objections to a magistrate judge's memorandum and recommendation, the district court conducts a *de novo* review of the challenged portions. *See Arnett v. Leviton Mfg.*, 174 F. Supp. 2d 410, 412 (W.D.N.C. 2001) (citing 28 U.S.C. § 636(b)). The district judge may accept,

3

reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). It does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *Id.* To survive a motion to dismiss, a complaint must contain "sufficient factual matter . . . to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). To assess whether a given complaint states a plausible claim, the reviewing court first disregards conclusory allegations. *See id.* at 679 ("[A] court considering a motion can dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Treating the remaining, well-pleaded allegations as true, and drawing all reasonable inferences in favor of the plaintiff, the Court then determines whether those allegations plausibly give rise to an entitlement to relief. *See id.*; *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

## IV.     DISCUSSION

DeMayo argues that it cannot be sued under § 502(a)(3) of ERISA, citing three District Court cases from the same district. *See Great-West Life & Annuity Ins. Co. v. Bullock*, 202 F. Supp. 2d 461, 465 (E.D.N.C. 2002); *T.A. Loving Co. v. Denton*, 723 F. Supp. 2d 837, 843 (E.D.N.C. 2010); *CSC Emp. Benefits Fiduciary Comm. v. Avera*, No. 5:15-CV-4-BO, 2015 WL 4041333, at *2–3 (E.D.N.C. July 1, 2015). The Court accordingly analyzes those cases, giving special attention to *Bullock*, which the other two cases applied.

*Bullock* presented similar facts to this case. An ERISA fiduciary sued a beneficiary, an attorney, and a law firm to obtain reimbursement of medical benefits from settlement proceeds. *See Bullock*, 202 F. Supp. 2d at 462. The court said of Section 502(a)(3): "Although ERISA grants

4

a right to sue for violations of its provisions, it does not specify who can be held liable for those violations." *Id*. at 464. Because it thought that ERISA was silent on that issue, the *Bullock* Court proceeded to consider state law, consistent with the practice of using state law to develop federal ERISA common law. *See id*. ("[F]ederal courts, including the Fourth Circuit, have consistently drawn from and sanctioned the use of the forum state's law, if that law is compatible with ERISA's policies.").

The resulting survey of North Carolina law led the court to determine that "North Carolina courts are hesitant to hold attorneys liable for actions that impact non-client third-parties, as those third-parties are not in privity with the attorney's employment contract." *Id*. After considering relevant state cases and ethical rules, the *Bullock* Court concluded that an attorney could only be liable under ERISA "where the attorney is a party or signatory to a plan/contract, he otherwise agrees to disburse funds in accordance with the plan, or his refusal to distribute proceeds to the [plan] was a result of negligence or was coupled with bad faith." *Id*. at 465.

*Denton* and *Avera*, the other cases cited by DeMayo, both applied *Bullock*. In *Denton*, the court found that *Bullock*'s "rule" had not been abrogated by the Supreme Court's decision in *Sereboff v. Mid-Atlantic Med. Servs.*, 547 U.S. 356 (2006).[4] *See Denton*, 723 F. Supp. 2d at 840–41. *Avera* similarly applied *Bullock* after rejecting cases from other circuits which had permitted third-party recoveries under ERISA. *Avera*, 2015 WL 4041333, at *5.

The Court is unpersuaded by *Bullock*. The analysis in that case hinged on a consideration of state law, which it only reached because it found ERISA silent on "who can be held liable for

---

[4] In *Sereboff*, the Supreme Court ruled that § 502(a)(3) permits ERISA fiduciaries to sue beneficiaries for reimbursement of medical expenses paid by the ERISA plan, because constructive trusts and equitable liens are proper "equitable relief" under the statute. *See* 547 U.S. at 359–69.

5

[ERISA violations]." *Bullock*, 202 F. Supp. 2d at 464. But two years before *Bullock*, the Supreme Court answered that question. Section 502(a)(3) "admits of no limit . . . on the universe of possible defendants." *Harris Trust & Sav. Bank v. Salomon Smith, Inc.*, 530 U.S. 238, 246 (2000). Instead, the sole limitation is the requirement that the plaintiff seeks "appropriate equitable relief." *Id*. at 246, 250–51.[5] *Bullock* does not even cite *Harris Trust*, suggesting that the court may have overlooked controlling authority.[6]

*Bullock* also answers the question of attorney liability by referring to state contracts law, finding that attorneys are outside the scope of § 502(a)(3) because they are not in privity with plan fiduciaries. This approach conflicts with ERISA. As the Supreme Court has instructed, the "starting point" for ERISA analysis is the common law of trusts. *See Harris Trust*, 530 U.S. at 250. Under trust principles, a plaintiff can seek "restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). In other words, the question here is not whether a defendant was bound under a contract, but whether the defendant possesses property that belongs in good conscience to someone else.

In summary, ERISA is not silent about whether attorneys can be sued. Section 502(a)(3) permits *anyone*—including a lawyer or a law firm—to be sued for reimbursement, so long as

---

[5] Equitable relief is appropriate under § 502(a)(3) when the relief sought would have been "typically available" "in the days of the divided bench." *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002). As discussed earlier, *Sereboff* made clear that reimbursement actions seeking constructive trusts or equitable liens are "appropriate equitable relief." *See* 547 U.S. at 359–69.

[6] *Denton* similarly does not cite *Harris Trust*. *Avera* cites it once: "[B]ecause *Harris Trust* . . . [does not] discuss attorney liability, the Court finds that . . . *Bullock* and *Denton* provide the proper test." *Avera*, 2015 WL 4041333, at *3.

equitable relief is otherwise appropriate. *See, e.g.*, *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 139 (2016) (barring recovery of general assets when settlement funds dissipated). That was the conclusion reached by the magistrate below.[7]

It was also the conclusion reached in *Barnhill Contracting Co. v. Oxendine*, 105 F. Supp. 3d 542 (E.D.N.C. 2015). In that case, the Honorable Judge Flanagan of the Eastern District of North Carolina split with her colleagues in ruling that "the overwhelming weight of Supreme Court and other circuit court authority supports the availability of a claim for equitable relief against [law firm] defendants . . . where it is alleged that the [law firm] defendants had notice of the plan's subrogation to [the beneficiary's] rights of recovery." *Id.* at 549. Judge Flanagan similarly rejected her colleagues' resort to state law. Although she recognized that federal courts may look to ERISA common law as informed by state law, "state law is applicable only if compatible with national policies underlying ERISA, and only if it does not conflict with the Congressional purpose of enacting ERISA." *Id.* (cleaned up). Because ERISA was intended to provide uniform equitable relief without regard to the identity of a defendant, any state law to the contrary was inapplicable. *See id.*

*Oxendine*, not *Bullock*, is consistent with the bulk of out-of-circuit authority. The Fifth and Sixth Circuits recognize that nonparty attorneys can be liable under § 502(a)(3). *See Bombardier Aerospace Emp. Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, P.C.*, 354 F.3d 348, 354 (5th Cir. 2003), *abrogated on other grounds by Sereboff*, 547 U.S. at 362; *Longaberger Co. v. Kolt*, 586 F.3d 459, 467–68 & n.8 (6th Cir. 2009), *abrogated on other grounds by Montanile*, 577

---

[7] The magistrate found in the alternative that if ERISA did not permit attorney liability, that North Carolina state law yielded the same result. ECF No. 18 at 6. The Court does not adopt the magistrate's specific conclusions about state law because it agrees with the magistrate that the statute is determinative. Even if § 502(a)(3) were silent about the scope of liability, DeMayo's reading of state law would conflict with ERISA.

7

U.S. at 139. The Eleventh Circuit reached the same conclusion in a case that was later vacated on other grounds. *See AirTran Airways v. Elem*, 767 F.3d 1192, 1199 (11th Cir. 2014), *vacated on other grounds*, 136 S. Ct. 979 (2016). Other district courts have reached the same conclusion. *See, e.g.*, *Kohl's Dep't Stores v. Castelli*, 961 F. Supp. 2d 415, 426 (E.D.N.Y. 2013); *Cent. States v. Lewis*, 871 F. Supp. 2d 771, 776–78 (N.D. Ill. 2012); *McKesson Corp. v. Dillow*, Case No. 3:19-cv-164, 2020 WL 1469461, at *2–4 (S.D. Ohio Mar. 25, 2020); *Highmark Blue Cross Blue Shield West Virginia v. Johnson*, 2:17-cv-00786, 2018 WL 3435062, at *5 (W.D. Pa. July 17, 2018).

DeMayo turns to the Eighth Circuit's decision in *Treasurer v. Goding*, 692 F.3d 888 (8th Cir. 2012) to argue that out-of-circuit authority supports its position. In *Goding*, the Eighth Circuit affirmed summary judgment for a lawyer sued by a plan administrator, finding that the lawyer (1) was not bound by the plan; and (2) could not be liable in equity. *Id*. at 891–94. Although the result in *Goding* favors DeMayo, the reasoning decidedly does not. The Eighth Circuit explicitly acknowledged that "attorneys may be liable in equity even if they are not signatories to ERISA plans," but went on to explain that the lawyer could not be liable under the facts at bar because the plan administrator was effectively seeking legal, not equitable, remedies. *See id*. at 894 n.4 & 897.

Based on the foregoing analysis, the Court concludes that the complaint states a cause of action against DeMayo. Mann+Hummel plausibly alleges that (1) the Plan was entitled to reimbursement of $18,295.88; (2) from specifically identifiable settlement funds in the possession and control of DeMayo; (3) that DeMayo was fully aware of the Plan's entitlement; and (4) that DeMayo failed to remit settlement funds that were, in equity, owed to the Plan. Mann+Hummel

8

also seeks appropriate remedies in the form of declaratory relief and equitable relief via a constructive trust or equitable lien.[8]

## V. ORDER

**IT IS THEREFORE ORDERED** that:

1. Defendant DeMayo's Objections to the Memorandum & Recommendation (ECF No. 19) are **OVERRULED**.

2. The magistrate's Memorandum & Recommendation (ECF No. 18) is **ADOPTED AS MODIFIED** in this Order.

3. Defendant DeMayo's Motion to Dismiss (ECF No. 12) is **DENIED**.

**SO ORDERED**.

Signed: March 24, 2022

Graham C. Mullen
United States District Judge

---

[8] Mann+Hummel also appears to seek an injunction ordering turnover of the settlement proceeds. *See* ECF No. 1 at 11 (seeking an order "[d]irecting Defendants to pay or turn over such settlement proceeds, plus accumulated interest, to the Plan . . . ."). The Court harbors doubt about whether such an injunction is available, given that ERISA provides equitable, not legal, remedies. *See Knudson*, 534 U.S. at 210–11. Because DeMayo does not raise the issue, the Court will not address it further.

9

Case 3:21-cv-00374-GCM-DSC   Document 23   Filed 03/24/22   Page 9 of 9